# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNY L. MCGOWAN, JR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 16-1253-JDT-cgc |
| | ) | |
| CORECIVIC, ET AL., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON PENDING MOTIONS, PARTIALLY DISMISSING COMPLAINT, AND DIRECTING THAT PROCESS BE ISSUED AND SERVED

On September 20, 2016, Plaintiff Johnny L. McGowan, Jr., a Tennessee Department of Correction (TDOC) inmate who is currently incarcerated at the West Tennessee State Penitentiary in Henning, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181 *et seq*. (ECF No. 1.) The filing fee has been paid; therefore, the motion for an extension of time to pay the fee (ECF No. 9) is DENIED as moot.

McGowan's complaint concerns events that occurred during his previous incarceration at the Hardeman County Correctional Facility (HCCF) in Whiteville, Tennessee. HCCF is operated by CoreCivic, a private prison-management company formerly known as Corrections Corporation of America (CCA).[1] McGowan named CCA as a Defendant and, following the company's name-change, filed motions to amend the case caption and the Defendant's name on the docket. (ECF Nos. 8 & 10.) Those motions are GRANTED. The Clerk is DIRECTED to modify the docket to

---

[1] *See* www.corecivic.com.

reflect the change in CCA's name. The Clerk shall record the other Defendants as Dr. First Name

Unknown (FNU) Dietz; HCCF Health Administrator Jill Miller; HCCF Warden Grady Perry;

Associate Warden Charlotte Burns; Assistant Warden Byron Ponds; TDOC Compliance Officer

Darnell Peterson; Sergeants FNU Edwards, Arthur Thomas, FNU Fitzgerald and Mary Robertson;

Unit Managers E. Greer, Dorothy Robertson, Tanesha Douglas-Robinson, FNU Owens and Shatasha

Jones; Case Manager Tameka Walker; Officers S. Carver, FNU Polk, FNU Cross, LaShun Woods,

Barbara Pirtle, Ricky Beasley, and FNU Malone; Marquetta Golden; and Lieutenant (Lt.) Brandon

Smith.[2] Defendants are sued in both their individual and official capacities.[3]

On November 7, 2016, McGowan filed a motion to hold the case in abeyance so he could

exhaust his administrative remedies. (ECF No. 6.) That motion is DENIED as moot because

Plaintiff has since filed documents demonstrating the exhaustion of several grievances. (*E.g.*, ECF

Nos. 15, 16, 18-1, 18-2 & 23.)

## I. The Complaint

McGowan alleges that on September 14, 2015, he was forced to walk a long distance without

his four-prong cane by Defendant Edwards and an unidentified officer. (ECF No. 1 at 8.)

McGowan contends the officers could see he was using his cane and that he told them he was Class

B Medical; nevertheless, the officers said it did not matter because he had to be handcuffed. (*Id.*)

---

[2] Golden and Smith are named as Defendants in the amendment to the complaint filed
February 9, 2017. (ECF No. 18.)

[3] McGowan also purports to sue each Defendant's estate and/or insurance company.
Before a verdict is issued, any claim upon the estate of defendants is premature. Further, if
McGowan wants to name any insurance company as an actual defendant he must identify that
company. Service of process cannot be made on an unidentified party. The filing of a complaint
against such unidentified defendants does not toll the running of the statute of limitation against
that party. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalino v. Mich. Bell Tel.
Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968).

His hands were handcuffed behind his back, and the officers escorted him for several minutes. (*Id.*) As they passed Defendant Greer's office, she informed McGowan she had instructed that he be taken to segregation. (*Id.*) McGowan alleges that he suffers from Isthmic Spondilolisthesis and arthritis in his spine and that he was recovering from fractures in his lower spine at the time. (*Id.*) McGowan alleges that the actions of Defendant Edwards violated his Eighth Amendment rights, his right to equal protection as a disabled inmate under the Fourteenth Amendment, and the ADA. (*Id.* at 9.) He further alleges that CoreCivic was negligent in training its security staff on how to escort handicapped inmates from place to place within the prison. (*Id.*)

McGowan alleges that on November 12, 2015, he placed "another" of his "numerous" sick call and medical requests to Defendant Dietz and the HCCF medical staff, including Defendant Miller, requesting to have his "keep on person" medications renewed by the doctor. (*Id.* at 10.) However, his requests allegedly were ignored for several months, causing McGowan to suffer in pain without medication for his serious medical conditions. McGowan alleges that Defendants Dietz and Miller acted with deliberate indifference because they were aware, via his medical file, that he suffers from a thyroid condition, isthmic spondylolisthesis, chronic back pain and arthritis, and that he was recovering from several back fractures. (*Id.*)

In January 2016, Defendants Perry, Peterson, Greer, Ponds, Owens, Roberts, Dorothy Robertson, Jones, Walker, Mary Robertson (Robinson), Fitzgerald, Thomas, Woods, Carver, Beasley, Pirtle, Polk, and Cross allegedly "strongly implemented" TDOC policy #506.14.VI(E). (*Id.* at 11.) McGowan alleges that particular policy provides for "Tier Management" and that the Defendants used it to justify locking inmates who are in double-man cells into their cells for more than sixteen to twenty-three hours per day, which allegedly violates the Eighth Amendment. (*Id.* at 11-12.)

McGowan alleges that Defendant Peterson, the TDOC Compliance Officer, allowed the HCCF Defendants to ignore or illegally apply Tier Management and other TDOC policies, which McGowan contends resulted in the violation of his and other inmates' constitutional rights. (*Id.* at 13-14.)

On May 19, 2016, McGowan allegedly was again forced to walk without his cane, this time by Defendants Jones, Malone and Perry. (*Id.* at 14.)[4] After handcuffing him behind his back, Defendants Jones and Malone walked McGowan for several minutes. (*Id.* at 15.) McGowan alleges that when he had to stop repeatedly to adjust to the pain in his lower back and left knee, he was pushed by Defendant Jones. (*Id.*) Defendant Perry took over for Jones, and McGowan was walked further until a wheelchair was produced; McGowan was taken to the medical department prior to placement in segregation. (*Id.*) McGowan asserts this was a violation of the ADA and his constitutional rights. (*Id.*)

McGowan further alleges that he was in segregation for twenty days, during which he was subjected to cruel and unusual punishment. He alleges that he was confined in a double cell with small square footage and that the cell doors were barricaded with crossbars and steel grating to obstruct the view and prevent the windows from being washed. (*Id.* at 16.) Cleaning supplies were not issued daily, in violation of TDOC policy, and the cells were not cleaned at all until they unoccupied by inmates, possibly for thirty days or more. (*Id.*) Toilets would back up into neighboring cells, and the inmates had to eat their meals in those unsanitary conditions. (*Id.*) The cell doors were equipped with only one pie-flap or door opening, so that food trays and other items

---

[4] It is unclear whether McGowan's grievance #29540/307182 concerns this incident or yet a third similar incident which is not described in the complaint. That grievance alleges Defendants Jones and Malone forced McGowan to walk without his cane on May 23, 2016, not May 19, 2016. (ECF No. 15-1 at 4.)

had to be passed through the same opening, which McGowan alleges is unsanitary and unconstitutional.  (*Id.*)  He states the segregation showers are not handicapped-accessible, which allegedly violates the ADA and is unconstitutional.  (*Id.*)  McGowan contends that Defendants' allowing these conditions to exist amounted to deliberate indifference to his health and safety.  (*Id.* at 17.)

On February 9, 2017, McGowan filed a motion to amend the complaint.  (ECF No. 18.)  He seeks to assert a claim for retaliation against Defendant Douglas-Robinson and new Defendant Marquetta Golden, and to assert an excessive force claim against new Defendant Lt. Brandon Smith. The motion to amend is GRANTED.

In the amendment, McGowan alleges that on August 23, 2016, Defendants Douglas-Robinson and Golden moved him from his job and from (I)-Unit-Cell-A110 to HA-114 in retaliation and as punishment for his grievance against Officer Thomas, who is not a party, after she denied him access to the law library.  (*Id.* at 1-2.)

McGowan further alleges that after he was placed in a segregation cell on August 23, 2016, his cellmate, Cortez, was brought in from recreation.  (*Id.* at 3.)  Once Cortez was inside he announced, "Everybody get your shit off the floor I'm busting a sprinkler" and told McGowan, "I'm busting the sprinkler." (*Id.*)  Cortez packed his own property and gave it to Defendant Smith.  (*Id.*) When Smith closed the door to the cell, Cortez starting trying to break the sprinkler head with a shoe, and McGowan began "repeatedly telling Lt. Smith that I had nothing to do with whatever is going on I just got over here.  Let me out of the cell." (*Id.*)  Smith ignored McGowan and sprayed pepper spray into the cell, which McGowan alleges was a violation of TDOC policy and amounted to excessive force.  (*Id.* at 4.)  As a result, he allegedly suffered from a swollen throat and sinus problems lasting from two to three days.  (*Id.*)  McGowan told Defendant Smith about his injuries,

and the next day Smith contacted Nurse Rhymes, who is not a party. (*Id.*) The nurse came to the segregation unit and examined McGowan but "acted as if nothing was wrong" even though his throat was still raw, red and swollen. (*Id.*) During inspection later on August 24th, McGowan told Defendant Perry what had happened, and the Warden allegedly "approved of" Smith's actions. (*Id.*)

McGowan seeks injunctive relief in various forms as well as compensatory and punitive damages against all of the Defendants. (ECF No. 1 at 17-24; ECF No. 18 at 6-7.)

## II. Analysis

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

      (1)     is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

      (2)     seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). "[P]leadings that . . . are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket

assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). "Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Id.* (citing *Neitzke*, 490 U.S. at 328-29).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness.

*Id.* at 471 (citations and internal quotation marks omitted).

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have

no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

Plaintiff filed his complaint under both the ADA and 42 U.S.C. §1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

The complaint contains no factual allegations against Defendant Burns. When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

McGowan alleges that his Fourteenth Amendment right to equal protection of the law as a disabled prisoner was violated when Defendant Edwards and, presumably, also when Defendants

Jones, Malone and Perry required him to walk in handcuffs and without his cane. The Supreme Court held in *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440, 441-46 (1985), that disabled persons are neither a suspect nor a quasi-suspect class. Thus, classifications involving disability are reviewed under the "rational basis" standard. *Id.* at 446. Therefore, there must only be "a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe*, 509 U.S. 312, 320 (1993) (citing *Nordlinger v. Hahn*, 505 U.S. 1 (1992)).

The Court notes, however, that McGowan's allegation is that he was told he had to be handcuffed while being escorted by the officers, which prevented him from using his cane to help him walk. Therefore, he does not appear to be contending that he was singled out and treated differently than prisoners who are not disabled. Instead, his claim is that the HCCF requirement that he be handcuffed failed to accommodate his disability. Accordingly, McGowan has failed to state a claim for violation of the Equal Protection Clause under § 1983.

The § 1983 claims against the Defendants in their official capacities are construed as claims against their employers. For Defendant Peterson, such claims are against TDOC, for all other Defendants the claims are against CoreCivic.

Claims against TDOC are, in turn, construed as claims against the State of Tennessee. However, McGowan cannot sue the State of Tennessee under 42 U.S.C. § 1983. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see*

*also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01. Tennessee has not waived its sovereign immunity. *See* Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

The complaint also does not allege a viable § 1983 claim against CoreCivic. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)); *see also Parsons v. Caruso*, 491 F. App'x 597, 609 (6th Cir. 2012) (corporation that provides medical care to prisoners can be sued under § 1983). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care to prisoners. *Thomas*, 55 F. App'x at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001). CCA "cannot be held liable under a theory of respondeat superior." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). Instead, to prevail on a § 1983 claim against CoreCivic, McGowan "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Id.*

The complaint does not adequately allege that McGowan suffered an injury because of an unconstitutional policy of custom of CoreCivic. At best, the complaint could be construed as alleging that CoreCivic had a *de facto* policy of failing to correctly follow various TDOC prison

policies and regulations. However, failure to comply with state administrative policies and procedures does not rise to the level of a constitutional violation. *See Barber v. City of Salem, Ohio*, 953 F.2d 232, 240 (6th Cir. 1992); *Crockett v. Hawkins*, No. 3:16-2059, 2017 WL 2880395, at *4 (M.D. Tenn. July 17, 2017); *Stevens v. Mich. Dep't of Corr.*, No. 1:17-cv-495, 2017 WL 2703927, at *3 (W.D. Mich. June 23, 2017).[5]

Many of McGowan's claims are brought under the Eighth Amendment, which prohibits cruel and unusual punishment. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298; *Brooks v. Celeste*, 39 F.3d 125, 127-28 (6th Cir. 1994); *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298. The subjective component requires that the official act with the requisite intent, that is, that he have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 297, 302-03.

The objective component of an Eighth Amendment claim for inadequate medical care requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (internal quotation marks and citations omitted); *see also*

---

[5] While McGowan also alleges that CoreCivic failed to train its employees in how to escort disabled prisoners, he alleges only that the failure to train was negligent. (ECF No. 1 at 9, 15.)

*Santiago v. Ringo*, 734 F.3d 585, 590 (6th Cir. 2013) (same); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (same).

To establish the subjective component of an Eighth Amendment medical claim, a prisoner must demonstrate that the prison official acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus,

> *[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.* This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38 (emphasis added; citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment.").

"'[T]hat a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment.'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "The requirement that the official have subjectively perceived a risk of harm and then disregarded

it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). "When a doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id.*; *see also Johnson*, 398 F.3d at 875 (same). "'[D]eliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Comstock*, 273 F.3d at 703 (quoting *Farmer*, 511 U.S. at 836).

McGowan alleges that for several months Defendants Dietz and Miller failed to provide him with needed medications for his chronic conditions, including pain medication, even after being repeatedly requested to do so. Thus, he was in pain for a considerable amount of time. The Court finds these allegations state a plausible Eighth Amendment claim for inadequate medical care.

The Court construes McGowan's claims against Defendants Edwards, Jones, Malone and Perry for handcuffing him behind his back and requiring him to walk without his cane as claims for failure to protect. "In the prison context, the Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates." *Clark v. Corr. Corp. of Am.*, 98 F. App'x 413, 415 (6th Cir. 2004). Although McGowan alleges that on both occasions he told the Defendants he needed his cane and was Class B Medical, he also alleges that he only had to walk for "several minutes" each time. (ECF No. 1 at 8, 14-15.) With regard to the incident on September 14, 2015, there is no allegation that McGowan actually told the officers he was in pain or that he requested any medical attention. (*Id.* at 8.) During the May 2016 incident, after McGowan kept stopping because of the pain, a wheelchair was provided for him and he was taken to the medical

department. (*Id.* at 15.)[6] These allegations are insufficient to state a claim for deliberate indifference under the Eighth Amendment claim.

McGowan alleges that various conditions at the HCCF violated the Eighth Amendment, including: use of the Tier Management concept, which allegedly kept segregated inmates who were in small double cells locked down for sixteen to twenty-three hours each day; cell doors that were barricaded with crossbars and grating so that the view was obstructed; failure to provide daily cleaning supplies to segregated inmates, resulting in the cells becoming unsanitary; cell doors with only one pie-flap for both food trays and other items; and showers in the segregation unit that were not handicapped-accessible.

To satisfy the objective component of an Eighth Amendment claim in this context, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). The Constitution "'does not mandate comfortable prisons.'" *Wilson*, 501 U.S. at 298 (quoting *Rhodes*, 452 U.S. at 349). "[R]outine discomfort 'is part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In considering the types of conditions that constitute a substantial risk of serious harm, the Court evaluates not only the seriousness of the potential harm and the likelihood that the harm will

---

[6] While McGowan alleges that Defendant Jones pushed him (ECF No. 1 at 15), he does not allege that the action caused him to fall or resulted in any injury.

actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency, *i.e.*, that society does not choose to tolerate the risk in its prisons. *Helling*, 509 U.S. at 36. The Supreme Court has also emphasized that prisoners can rarely establish an Eighth Amendment violation from a combination of conditions of confinement that, in themselves, do not rise to the level of a constitutional violation:

> *Some* conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise — for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.

*Wilson*, 501 U.S. at 304-05 (emphasis in original; citation omitted); *see also Thompson v. Cnty. of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994) ("Eighth Amendment claims may not be based on the totality of the circumstances, but rather must identify a specific condition that violates" a particular right); *Carver v. Knox Cnty., Tenn.*, 887 F.2d 1287, 1294 (6th Cir. 1989).

McGowan's allegations do not establish that any of these conditions, either singly or in combination, present a sufficient threat to his health or safety to rise to the level of an Eighth Amendment violation, as the conditions do not appear to have caused him any actual harm. *See also* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act.").

McGowan's final Eighth Amendment claim is that Defendant Smith subjected him to excessive force by spraying pepper spray into his cell when McGowan's cellmate, Cortez, attempted to break the sprinkler head.

With regard to claims of excessive force by prison officials, "[t]he test for whether the use of force violates the Eighth Amendment requires a court to determine if the defendant's conduct caused the unnecessary and wanton infliction of pain." *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010) (internal quotation marks omitted). That question "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (internal quotation marks omitted); *see also Hudson*, 503 U.S. at 6-7.

In *Hudson*, the Supreme Court held that a significant physical injury is not required to establish the objective component of an Eighth Amendment claim. 503 U.S. at 7-9. However, the Supreme Court made clear that every physical contact does not violate the Eighth Amendment:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d [1028,] 1033 [(2d Cir. 1973)] ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chamber, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind." *Whitley*, 475 U.S., at 327 , 106 S. Ct., at 1088 (quoting *Estelle*, *supra*, 429 U.S., at 106, 97 S. Ct., at 292) (internal quotation marks omitted).

*Id.* at 9-10.

The Supreme Court re-emphasized, however, in *Wilkins v. Gaddy*, 559 U.S. 34 (2010), that claims of excessive force do not require any particular quantum of injury, and the extent of injury is only one factor bearing on whether the use of force was necessary in a particular situation. *Id.* at 37. The Court stated, "[i]njury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* at 38.

Here, the Court finds that McGowan has failed to state a claim for excessive force. He plainly alleges that Smith used the pepper spray because Cortez was attempting to destroy prison property. (ECF No. 18 at 3.) McGowan does not allege that Smith's use of the pepper spray was unnecessary to restore discipline or that it was used maliciously in order to cause harm. Rather, McGowan alleges only that use of the pepper spray violated the Eighth Amendment because it was against TDOC policy. (*Id.*)

To the extent that McGowan is alleging that Defendants Perry, Burns, Ponds or Dorothy Robertson are liable as supervisors, he has no claim under § 1983 merely because of their positions.[7] Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his or her subordinates, but fails to act, generally cannot be held liable in his or her individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996).

---

[7] The Court has found, *supra*, that Plaintiff did not state a claim against Defendant Perry for his direct participation in the May 2016 incident when Plaintiff had to walk without his cane.

McGowan also does not sufficiently state a claim against these Defendants for failing to investigate or take remedial measures to the extent they were aware of his grievances and complaints. A failure to take corrective action in response to an inmate grievance or complaint ordinarily does not supply the necessary personal involvement for § 1983 liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").

In the February 9, 2017, amendment to the complaint, McGowan also alleges that Defendants Douglas-Robinson and Golden retaliated against him because he filed a grievance complaining that he had been denied use of the law library. Specifically, he alleges that he was removed from his prison job and moved to a different housing unit.

"Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution." *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005).

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc); *see also Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004) (same); *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001) (same). "If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct." *Smith*, 250 F.3d at 1037.

The filing of a non-frivolous grievance is protected conduct under the First Amendment. *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."). Here, McGowan alleges his grievance concerned denial of access to the law library. Without more details, the grievance cannot be deemed frivolous.[8] *See, e.g., Hill v. Lappin*, *supra*, 630 F.3d at 472 (prisoner not required to allege that a grievance was not frivolous in order to survive screening under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A).

Likewise, being transferred or moved to a different housing unit or loss of a prison job can constitute an adverse action that is sufficient to support a claim of retaliation. "Even though a prisoner has no inherent constitutional right to avoid segregated housing or prison transfers, the [prison] may not place the prisoner in segregated housing or transfer him to another prison as a means of retaliating against his for exercising his First Amendment rights." *Id.* at 473. *See also Siggers-El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005) (transfer that resulted in loss of higher-paying prison job was adverse action).

The Court finds that McGowan has stated a plausible claim for retaliation against Defendants Douglas-Robinson and Golden.

Finally, McGowan has no valid claim under the ADA. The complaint refers only to Title III of the ADA, 42 U.S.C. §§ 12181-12189. Title III prohibits disability discrimination by certain privately owned or operated places of public accommodation.[9] However, private prisons are not

---

[8] Although McGowan has provided copies of many of his grievance documents, this particular grievance is not among them.

[9] Title III provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

among those private entities that are considered a "public accommodation." *See id.*, § 12181(7); *see also Tester v. Hurm*, No. 09-318-JBC, 2011 WL 6056407, at *3 (E.D. Ky. Dec. 5, 2011).

To the extent McGowan may also intend to assert a cause of action under Title II of the ADA, he likewise has no claim. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II of the ADA does apply to state prisons, as public entities. *Pennsylvania v. Yeskey*, 524 U.S. 206, 213 (1998). However, "though CCA has contracted with a government entity to provide governmental prison services, that does not convert CCA into a 'public entity' for purposes of Title II." *Tester*, 2011 WL 6056407, at *3 (citing *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010)); *see also Miracle v. Smith*, No. 3:16-CV-P346-JHM, 2016 WL 5867825, at *3 (W.D. Ky. Oct. 6, 2016) (private company contracted to provide medical care to inmates at a state prison not a "public entity" under Title II).

## III. Conclusion

For the foregoing reasons, with the exception of the claim for inadequate medical care against Defendants Dietz and Miller and the retaliation claim against Defendants Douglas-Robinson and Golden, the Court DISMISSES McGowan's complaint and amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim.

Process will be issued for Defendants Dietz, Miller, Douglas-Robinson and Golden in their individual capacities. It is ORDERED that the Clerk shall issue process for Defendants Dr. Dietz, Health Administrator Jill Miller, Unit Manager Tanesha Douglas-Robinson and Marquetta Golden and deliver that process to the U.S. Marshal for service. Service shall be made on the Defendants pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rule of Civil Procedure 4.04(1) and

(10), either by mail or personally if mail service is not effective.  All costs of service shall be advanced by the United States.

It is further ORDERED that Plaintiff shall serve a copy of every subsequent document he files in this cause on the attorneys for the Defendants or on any unrepresented Defendant.  Plaintiff shall make a certificate of service on every document filed.  Plaintiff shall familiarize himself with the Federal Rules of Civil Procedure and this Court's Local Rules.[10]

Plaintiff shall promptly notify the Clerk, in writing, of any change of address or extended absence.  Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

 s/ **James D. Todd**                                    
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[10] A free copy of the Local Rules may be obtained from the Clerk. The Local Rules are also available on the Court's website at www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.