IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JOHNNY L. MCGOWAN, JR.,

    Plaintiff,

v.                                                               No. 1:16-cv-01253-JDB-cgc

CORECIVIC, *et al.*,

    Defendants.

___

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DISMISSING CASE
___

This action was filed pursuant to 42 U.S.C. § 1983 and Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181, *et seq.*, in September 2016 by *pro se* Plaintiff, Johnny L. McGowan, currently a prisoner at the Northeastern Correctional Complex in Mountain City, Tennessee, against Defendants, Dr. Bernhard Dietz, and Jill Miller, along with others. (Docket Entry ("D.E.") 1.) Subsequently, McGowan amended his complaint to add retaliation claims under § 1983 against Defendants, Tanesha Douglas, and Marquetta Golden. (D.E. 18.) Pursuant to the screening procedures of 28 U.S.C. § 1915, District Judge James D. Todd dismissed all of Plaintiff's claims except for those brought under § 1983 against Defendants, Dietz, Miller, Douglas, and Golden ("the remaining Defendants"). (D.E. 28.) In accordance with the Court's order, (*id.*), the Clerk of Court issued summonses for all the remaining Defendants, (D.E. 29). However, the United States Marshals Service was unable to effect service on Miller. (D.E. 30, 62.) On February 28, 2018, the case was transferred to the undersigned. (D.E. 49.)

1

Defendants filed a motion for summary judgment on October 10, 2018, (D.E. 79), to which Plaintiff responded with a Rule 56(f) affidavit, protesting that Defendants' motion was premature because discovery had not yet been completed, (D.E. 84). Indeed, two motions to compel discovery had been pending at the time of the motion, (D.E. 64, 74); however, upon the denial of those motions by Magistrate Judge Charmaine Claxton, (D.E. 90), the Court rejected Plaintiff's Rule 56(f) request. (D.E. 92.) Following the entry of that order, Plaintiff filed a substantive response to Defendants' motion for summary judgment, (D.E. 93), to which Defendants replied, (D.E. 94). Accordingly, Defendants' motion is ripe for decision.

## I. FACTS

During all relevant events set forth in Plaintiff's complaint, he was an inmate at Hardeman County Correctional Facility ("HCCF") in Whiteville, Tennessee. (D.E. 1 at ¶ 6; D.E. 18 at ¶¶ 2–4.) When McGowan was transferred to HCCF in September 2015, consistent with the prison's medical policy, Dr. Dietz temporarily prescribed the four medications to treat his hypertension and hypothyroidism that had been provided at his previous prison. (D.E. 93-1 at PageID 657–58.) The doctor left the nursing staff responsible for scheduling a follow-up appointment, at which time Plaintiff was to be prescribed a larger supply of the medicine. (*Id.* at PageID 659–60.) No such appointment was ever scheduled and the inmate exhausted his allotment soon after his arrival at HCCF. (*Id.* at PageID 658–60.) Plaintiff alleged that he made sick call requests to receive a refill, but according to facility policy, the doctor was not responsible for those appointments. (*Id.* at PageID 663.) When Dietz learned on January 6, 2013 that no follow-up appointment had been made, he scheduled McGowan an appointment for the next day, at which time, he was evaluated by a nurse practitioner and prescribed additional medication. (*Id.* at PageID 659–60.) Prison medical staff dispensed Plaintiff's medication on

January 13, (*Id.* at PageID 661), and thereafter, McGowan had no difficulty in obtaining his prescriptions, (*Id.* at PageID 661–64). Dietz did not personally evaluate Plaintiff until July 19, 2016, when he prescribed the inmate new medications for his conditions. (*Id.* at PageID 662.)

From June 9, 2016, to August 23, 2016, McGowan resided in the I Unit, A Pod at HCCF. (*Id.* at PageID 664.) During that time, Golden served as Plaintiff's case manager. (*Id.*) On August 23, 2016, Golden performed an inspection of the inmate's cell. (*Id.* at PageID 665.) What occurred during the inspection is disputed by the parties. Defendants claim that Plaintiff refused to follow Golden's verbal commands; acted belligerently and threatened the officer; and behaved disrespectfully toward her. (*Id.*) McGowan refutes this characterization of the events by stating that such behavior would have resulted in a disciplinary infraction, per Tennessee Department of Corrections ("TDOC") policy, and because no evidence of any infractions exists, he necessarily did not behave in this manner. (*Id.*) Because Golden felt threatened by the incident, she transferred Plaintiff to the H Unit, A Pod, where she was not the case manager. (*Id.* at PageID 665–66.) As a result of the transfer, the inmate lost his job as a cleaner. (*Id.* at PageID 666.) Defendants state that Plaintiff began working as a kitchen cleaner upon his transfer, but the inmate disputes this assertion, once again pointing to a lack of documentation as opposed to offering an affirmative denial. (*Id.*) Douglas was not working at HCCF on the date of Plaintiff's transfer, and, therefore, did not participate in the decision. (*Id.*)

While incarcerated at HCCF, Plaintiff submitted 29 grievances against prison staff, 18 of which were presented after his transfer on August 23, 2016. (*Id.* at PageID 668–69.) Per TDOC policy, each complaint was initially reviewed by the grievance chairperson one at a time. (*Id.* at PageID 668.) McGowan claims that his August 23 transfer was in retaliation for his filing a particular grievance against an Officer Thomas and a Lieutenant Morrow on August 9, 2016.

3

(D.E. 18 at ¶ 1.) However, as a result of the review policy and the inmate's numerous filings, Plaintiff's August 9 claim was not reviewed until November 29, 2016. (D.E. 93-1 at PageID 669.)

## II. LEGAL STANDARD

Rule 56 permits the court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "There is no genuine issue for trial where the record 'taken as a whole could not lead a rational trier of fact to find for the nonmovant.'" *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013)) (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The moving party bears the initial burden of establishing that there are no genuine issues of material facts, which it may accomplish 'by demonstrating that the nonmoving party lacks evidence to support an essential element of [his] case.'" *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 851 (6th Cir. 2017) (quoting *Ford v. Gen Motors Corp.*, 305 F.3d 545, 551 (6th Cir. 2002)). "The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party." *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) (citing *Banks v. Wolfe Cty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003)). "[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment." *Id.* (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). Thus, "in order to defeat summary judgment, the party opposing the motion must present affirmative evidence to support [his] position; a mere 'scintilla of evidence' is insufficient." *Id.* (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003)). In making a determination on a Rule 56 motion, the court is to "view all evidence in the light most favorable to the nonmoving

party." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007) (citing *Matsushita*, 475 U.S. at 587).

Although McGowan is a *pro se* litigant, and the Court has "a corresponding duty to accord him 'the benefit of a liberal construction of [his] pleadings and filings,' '*pro se* plaintiffs are not automatically entitled to take every case to trial and the lenient consideration generally accorded to *pro se* litigants has limits.'" *Farah v. Wellington*, 295 F. App'x 743, 748 (6th Cir. 2008) (alteration in original) (first quoting *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir.1999), then quoting *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir.1996)). Such liberal consideration of *pro se* pleadings "does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).

### III.  ANALYSIS

*Section 1983 Claims Generally*

Section 1983 provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In order to state a claim under the statute, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Doe v. Miami Univ.*, 882 F.3d 579, 595 (6th Cir. 2018). "Section 1983 creates no substantive rights, but 'merely provides remedies for deprivations of rights established elsewhere.'" *Flagg v. City of Detroit*, 715 F.3d 165, 173 (6th Cir. 2013) (citing *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000)).

5

### A. Deliberate Indifference Claim against Defendant Dietz

McGowan argues that Dietz was deliberately indifferent to his serious medical needs by failing to prescribe him medication after the inmate's initial prescription ran out. (D.E. 1 at ¶ 26.) The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. An inmate advancing an Eighth Amendment claim must "allege 'deliberate indifference' to his 'serious' medical needs." *Rhinehart v. Scutt*, 894 F.3d 721, 736 (6th Cir. 2018) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

The Court uses a two-prong test to assess a deliberate indifference claim. *Burgess*, 735 F.3d at 476 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). First, a court must "determine whether the plaintiff had a 'sufficiently serious medical need' under the objective prong. *Id.* (citing *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)). "A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment." *Id.* (citing *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir.2004)). Second, the court determines "whether the defendant had a 'sufficiently culpable state of mind' in denying medical care under the subjective prong." *Id.* (citing *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir.2000)). The requisite culpability for a successful deliberate indifference claim demands a showing of something above "mere negligence," yet below "specific intent to harm or knowledge that harm will result." *Id.* (citing *Farmer*, 511 U.S. at 835.) "Under *Farmer*, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Blackmore*, 390 F.3d at 896 (quoting *Farmer*, 511 U.S. at 837). The defendant's subjective "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs" is axiomatic to

the deliberate indifference state of mind. *Id.* (quoting *Horn v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)).

Furthermore, "§ 1983 liability cannot be imposed under a theory of *respondeat superior*." *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80–81 (6th Cir. 1995) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). This does not mean that supervisors can never be liable under § 1983, but "[a]t a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Petty v. Cty. of Franklin, Ohio*, 478 F.3d 341, 349 (6th Cir. 2007) (quoting *Taylor*, 69 F.3d at 81). A "mere failure to act" is not sufficient. *Walters v. Stafford*, 317 F. App'x 479, 486 (6th Cir. 2009) (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)). "A plaintiff must show that a supervising officer did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on. Nor can the liability of supervisors be based solely on . . . simple awareness of employees' misconduct." *Id.* at 486–87.

In the present case, it is undisputed that Dietz provided McGowan with a limited amount of medication after he was transferred to HCCF. (D.E. 93-1 at PageID 658.) It is likewise uncontested that the doctor relied on nurses to schedule follow-up appointments Plaintiff needed to renew his prescriptions. (*Id.* at PageID 663.) While it is clear from the record that such an appointment was not timely scheduled and, as a result, McGowan did not receive his necessary medication for roughly four months, it is equally undisputed that there is no evidence in the record indicating that Dietz knew of his need and disregarded it.[1] To the contrary, he entrusted

---

[1] In his response to the motion for summary judgment, Plaintiff misapprehended the subjective inquiry of the deliberate indifference test as it applies to this case. (D.E. 93-2 at PageID 864 ("Genuine issues of material fact[] as to whether Dr. Dietz . . . was subjectively

his staff to fulfill the need, and when he learned of their error, he corrected it. (*Id.* at PageID 659–60.) Furthermore, no evidence has been presented that the doctor authorized, approved, or knowingly acquiesced in any unconstitutional behavior. Therefore, to the extent Plaintiff attempts to invoke the Eighth Amendment by alleging deliberate indifference, his claim must fail because of the dearth of evidence satisfying the subjective prong of the deliberate indifference inquiry.[2]

### B. Retaliation Claim against Defendant Golden

Plaintiff alleges that Golden retaliated against him, in violation of his First Amendment right to free speech, by transferring him to a different pod after he filed a grievance against an Officer Thomas, which caused him to lose his job as a cleaner. (D.E. 18 at ¶¶ 1–2.) A retaliation claim has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The filing of a non-frivolous grievance is protected conduct under the First Amendment. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). However, "[i]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise" *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982); *accord Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). Transfer from one

---

aware that the Plaintiff suffered from the above[-]mentioned medical conditions.").) The crux of that issue is not whether the doctor understood the seriousness of his illnesses—that much is clear based on his actions in January 2016—it is whether he was subjectively aware that the inmate had not received the necessary treatment for his condition.

[2] Defendants do not dispute that the objective prong of the deliberate indifference test is satisfied.

unit to another is not the type of adverse action that would deter a person of ordinary firmness from the exercise of his First Amendment rights. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (holding that a transfer from prison to prison does not meet the second element). With respect to the third element, an action that precedes protected conduct cannot logically be considered retaliatory. *Almond v. Cline*, No. 1:18-cv-641, 2018 WL 3545036, at *4 (W.D. Mich. July 24, 2018).

Defendants do not dispute that the filing of a grievance is conduct protected by the First Amendment. However, McGowan's claim does fail on the second and third elements. As previously noted, the transfer of Plaintiff from one unit to another within a prison cannot be considered an action that would dissuade a person from exercising his First Amendment rights. As Defendants point out, the transfer did not, in fact, prevent Plaintiff from doing so: he filed 18 more grievances after being moved. (D.E. 80-1 at PageID 544.) Even if McGowan's relocation was considered sufficiently adverse, he has pointed to no proof in the record that indicates the officer was made aware of his grievance until well after he was moved. Because of this lack of evidence, Plaintiff's retaliation claim fails.

C.     *Retaliation Claim against Defendant Douglas*

The gravamen of Plaintiff's claim against Douglas is that she approved of Golden's retaliatory action of transferring him to another unit. For the reasons explained above, the underlying action was not retaliatory. *See* IV-B, *supra*. Furthermore, as set forth regarding McGowan's claim against Dietz, a supervisor must have "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Petty*, 478 F.3d at 349 (quoting *Taylor*, 69 F.3d at 81); *see* IV-A, *supra*. Douglas states, and Plaintiff does

not dispute, that she was not working the day of his transfer. (D.E. 93-1 at PageID 666.) Thus, McGowan's retaliation claim against Douglas is meritless.

## V. CONCLUSION

In light of the foregoing, Defendants' motion for summary judgment is GRANTED. Furthermore, Plaintiff's deliberate indifference claim against Defendant Miller is DISMISSED for failure to effect service within 90 days, as required by Fed. R. Civ. P. 4(m). As no claims remain, the case is DISMISSED and, Defendants' evidentiary objections are DENIED AS MOOT.

IT IS SO ORDERED this 7th of February 2019.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE